45 F.3d 440
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Michael MORALES, Defendant-Appellant.
 No. 93-2284.
 United States Court of Appeals, Tenth Circuit.
 Dec. 27, 1994.
 
 ORDER AND JUDGMENT[1]
 Before BALDOCK, Circuit Judge, and SETH and McWILLIAMS, Senior Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 This direct appeal from a criminal conviction in the United States District Court for the District of New Mexico concerns the so-called Allen instruction. Allen v. United States, 164 U.S. 492 (1896).
 
 
 3
 By superseding indictment, Anthony Michael Morales was charged in two counts with being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1) and 924(a). Count 1 charged Morales with being a felon in possession of a Brico Arms, Model .38, 380 Auto caliber stainless steel pistol on October 10, 1992 which had been shipped in interstate commerce. Count 2 charged Morales with being a felon in possession of a Smith & Wesson Model 60, .38 caliber revolver on January 29, 1993 which had been shipped in interstate commerce. A jury convicted Morales on both counts. Morales was later sentenced to imprisonment for ninety months on each count, to be served concurrently, followed by three years of supervised release. Morales has appealed his convictions and sentences and the only issue raised on appeal concerns the giving of the Allen instruction.
 
 
 4
 On June 29, 1993, a jury was selected and Morales' trial commenced. The prosecutors called some nine witnesses and the defense called five witnesses, one of whom was Morales. As to count 1, Morales admitted possession of the firearm, but claimed there was "legal justification" for such because he was on someone's "hit list" and feared for his life. As to count 2, Morales simply denied possession of that particular firearm which was taken in the search of a friend's home where Morales was at the time.
 
 
 5
 The presentation of evidence concluded at about 2:30 p.m. on June 29, 1993, the same date the trial commenced, and the jury was excused until the following day. On June 30, 1993, at 9:00 a.m., jury instructions were read the jury, followed by closing argument of counsel. At about 10:00 a.m. the case was submitted to the jury. At about 12:30 p.m. on June 30, 1993, the jury was taken to lunch, and the jury resumed its deliberations around 1:30 p.m.
 
 
 6
 We are advised that shortly after 2:00 p.m. on June 30, 1993, the district judge sent a note to the jury inquiring as to the progress in their deliberations. We do not find that note in the record before us. In any event, the jury indicated that they were not "reasonably close" to a decision and would welcome additional instructions. Whereupon, the district court, over objection, gave the jury the following additional instruction:
 
 
 7
 Members of the jury, I am going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case.
 
 
 8
 And I have a few additional comments I would like for you to consider as you do so.
 
 
 9
 This is an important case. The trial has been expensive in time, effort and money to both the defense and the prosecution. If you should fail to agree on a verdict, the case is left open and must be tried again.
 
 
 10
 Obviously another trial would only serve to increase the cost to both sides. And there is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you.
 
 
 11
 Any future jury must be selected in the same manner and from the same source as you were chosen, and there is no reason to believe that the case could ever be submitted to twelve men and women more conscientious, more impartial or more competent to decide it, or that more or clearer evidence could be produced.
 
 
 12
 If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his own mind is a reasonable one, since it appears to make no effective impression upon the minds of the others.
 
 
 13
 On the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought to seriously ask themselves again, and most thoughtfully, whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of their fellow jurors and whether they should distrust the weight and sufficiency of evidence which fails to convince several of their fellow jurors beyond a reasonable doubt.
 
 
 14
 Remember that at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence.
 
 
 15
 But remember also that after full deliberation and consideration of the evidence in this case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious conviction.
 
 
 16
 You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty.
 
 
 17
 You may be as leisurely in your deliberations as the occasion may require, and you should take all the time which you may feel is necessary.
 
 
 18
 I will ask that you now again retire and continue your deliberations with those additional comments in mind, to be applied, of course, in conjunction with all of the instructions that I have previously given to you.
 
 
 19
 And I should inform you, Mr. Simmons, that it is not necessary to have a unanimous verdict of the jury as to both counts. It is possible that you can render a verdict as to one count and not to another.
 
 
 20
 So with that, you'll retire to the jury room and resume your deliberations.
 
 
 21
 The jury then resumed deliberations at 2:35 p.m. and at about 4:00 p.m. indicated that they had arrived at a verdict. In open court, the verdicts of guilty as charged in both counts were received. The jury was polled and then discharged.
 
 
 22
 The instant case is virtually a carbon copy of United States v. Rodriguez-Mejia, 20 F.3d 1090 (10th Cir.1994), cert. denied, --- U.S. ---- (1994), 1994 WL 372759. Coincidentally, the trial judge in the instant case was the trial judge in Rodriguez-Mejia ! In Rodriguez-Mejia, the jury commenced deliberations at 11:30 a.m., shortly thereafter took a lunch break, and after deliberating about two hours was given an Allen instruction over defense counsel's objection. The jury then deliberated for about two more hours and was excused for the day. The following day the jury resumed deliberations and, after about one hour of deliberation, returned a verdict of guilty.
 
 
 23
 On appeal, we affirmed the conviction of Rodriguez-Mejia and held that "neither the wording nor the timing of the district court's Allen instruction was coercive." 20 F.3d at 1091. The Allen instruction given in the instant case is similar to, though not identical with, the instruction given in Rodriguez-Mejia. We view the instruction given in the instant case to be "neutral" and not necessarily prejudicial to Morales. In this regard, the instruction was no more prejudicial to Morales than it was to the government. It advised the jurors, in effect, that they should not make up their minds until they had at least listened to the views of the other jurors--which is, of course, just what a juror should do. Further, in Rodriguez-Mejia we concluded that "the court did not err in giving an Allen instruction to the jury without evidence of a jury deadlock and after only two hours of deliberations." 20 F.3d at 1092. That fits the instant case.
 
 
 24
 On the basis of Rodriguez-Mejia, we affirm. As the Supreme Court said in Allen v. United States, 164 U.S. 492, 501-02 (1896):
 
 
 25
 While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments, and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment, or that he should close his ears to the arguments of men who are equally as honest and intelligent as himself. There was no error in these instructions.
 
 
 26
 Judgment affirmed and the mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470